| | | |
|---|---|---|
| **JOSEPH ALEXANDER CLINTON,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **ORDER** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |
| _____ | ) | |

This matter is before the Court on Petitioner's Motion to Vacate, Set Aside, or Correct

Sentence under 28 U.S.C. § 2255, (Doc. No. 1), on the Government's Response in Opposition,

(Doc. No. 10), and on Petitioner's Reply, (Doc. No. 15).

## I. BACKGROUND

In April 2010, pro se Petitioner Joseph Alexander Clinton, Davenon Farmer, Timothy

Herron, and Michael Moore agreed to rob Thomasboro Grocery in Charlotte, North Carolina.

(Criminal Case No. 3:10-cr-208-RJC-DSC-1, Doc. No. 167 at 21; 280: Trial Tr.; Doc. No. 168 at

80-99: Trial Tr.).  The participants planned their respective roles in the robbery.  Herron would

drive Farmer's van as the getaway vehicle; Petitioner would hold open the store's door to ensure

easy entry and that no one would enter the store during the robbery; Farmer would carry a gun;

and Moore would retrieve the money from behind the counter.  (Id., Doc. No. 167 at 288; Doc.

No. 168 at 17; 109-110; 160).  All four participants agreed to share the money stolen from the

store.  (Id., Doc. No. 167 at 293).

Petitioner and his co-conspirators carried out their plan and robbed Thomasboro Grocery

at gunpoint.  (Id. at 39-40).  The store manager, Kim Nguyen, and a cashier, sixteen-year-old Phrim Dagout, were minding the store.  (Id. at 38; 73).  Petitioner held the door while wearing a mask, and Farmer and Moore entered the store wearing dark clothing, masks, and gloves, with Farmer carrying a firearm.  (Id. at 39; 41; 75-76; 292-93; 328; 330; Doc. No. 168 at 17; 38-39; 117-19).  Farmer threatened to kill Dagout if Nguyen moved.  (Id., Doc. No. 167 at 39; 297).  Moore retrieved two cigar boxes, containing $8,000 and $2,000, respectively.  (Id. at 39; 49; 52; 62; 79; 298; 301-02).  Moore took the cash register drawer after Farmer pointed the gun at Dagout's face and demanded that she open it.  (Id. at 40; 300-01).  Petitioner and his co-conspirators stole a total of $11,000 from the store.  (Id., Doc. No. 116 at 6: PSR).

Nguyen called 911 after the robbers left, and police were dispatched almost immediately.  (Id., Doc. No. 167 at 304).  Petitioner and his cohorts fled the scene in a van.  (Id. at 40; 303; Doc. No. 168 at 121).  When they discovered that police were pursuing them, the robbers decided to leave the van at an elementary school and run.  (Id., Doc. No. 167 at 130-31; 306-07).  Moore fired two shots at the police officers who were pursuing them, after Moore stated that shooting at the police was the only way they could escape.  (Id. at 132; 135-36; 141; 148; 306; 310; Doc. No. 168 at 32; 125-27).  The robbery crew ran separate ways on foot.  (Id., Doc. No. 167 at 311).  Farmer, Moore, and Herron eventually arrived at Moore's house, where they stayed for several hours.  (Id., Doc. No. 168 at 129).  Petitioner ran elsewhere.  (Id.).

Petitioner was arrested a few hours after the robbery, after he encountered a roadblock set up to find the suspects.  (Id., Doc. No. 167 at 147-48; 256-60).  Petitioner waived his rights under Miranda v. Arizona, 384 U.S. 436 (1966), agreed to speak with law enforcement officers, and confessed his involvement in the robbery.  (Criminal Case No. 3:10-cr-208-RJC-DSC-1, Doc. No. 167 at 260; Doc. No. 168 at 67; 86; 88; 93).  Farmer was arrested several days later.  He, too,

confessed that he and others had robbed Thomasboro Grocery. (Id., Doc. No. 167 at 320; 322-26; 328).

Petitioner was indicted by a grand jury and charged with conspiracy to commit a Hobbs Act Robbery, in violation of 18 U.S.C. § 1951 (Count One); Hobbs Act robbery and aiding and abetting the same, in violation of 18 U.S.C. § 1951 and § 2 (Count Two), and aiding and abetting the use, carriage, and possession of a firearm in furtherance of that robbery, in violation of 18 U.S.C. § 924(c) and § 2 (Count Three). (Id., Doc. No. 3 at 1-3: Indictment). Petitioner pleaded not guilty, and on June 14, 2011, a jury convicted Petitioner on each count. (Id., Doc. No. 85: Jury Verdict). At trial, the jury heard Petitioner's confession. (Id., Doc. No. 168 at 76-79). The jury also heard evidence establishing Petitioner's involvement in the robbery and getaway effort from several other witnesses, including Petitioner's cohorts, Farmer and Herron. (Id., Doc. No. 167 at 267-330; Doc. No. 168 at 95-136).

On January 17, 2013, this Court sentenced Petitioner to a total term of 180 months of imprisonment. (Id., Doc. No. 159: Judgment). The sentence included 60 months of imprisonment on the Hobbs Act counts, and a consecutive 120-month sentence for the firearm count, the mandatory minimum called for by 18 U.S.C. § 924(c)(1)(A)(iii) "if the firearm is discharged." (Id., Doc. No. 169 at 3-5; 13: Sentencing Tr.). The Court of Appeals for the Fourth Circuit affirmed this Court's judgment on November 27, 2013, rejecting Petitioner's argument that his mandatory minimum sentence was erroneous because the fact that a firearm was discharged was neither charged in the indictment nor found by a jury. United States v. Clinton, 547 F. App'x 261, 263 (4th Cir. 2013).

Petitioner placed the petition in the prison system for mailing on November 24, 2013, and it was stamp-filed in this Court on December 2, 2014. Petitioner asserts five grounds in support

3

of his motion.  First, he contends that the performance of his trial counsel was constitutionally deficient based on three alleged acts or omissions.  (Doc. No. 1 at 5-6; 8).  Second, Petitioner contends that his appellate counsel was constitutionally deficient for failing to raise unspecified issues on appeal.  (Id. at 5).  Third, Petitioner contends that the proceedings were affected by prosecutorial misconduct because his confession was admitted against him.  (Id. at 8).  Fourth, Petitioner contends that the evidence was insufficient to establish that he was responsible for the use, carriage, or possession of a firearm.  (Id. at 9).  Fifth, Petitioner re-asserts an argument that Petitioner raised and the Fourth Circuit rejected on Petitioner's direct appeal—that Petitioner was erroneously subject to a mandatory-minimum sentence based on facts not charged in the indictment, in violation of Alleyne v. United States, 133 S. Ct. 2151 (2013).[1]  (Id. at 6).

## II.  STANDARD OF REVIEW

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein.  After examining the record in this matter, the Government's Response, and Petitioner's Reply, the Court finds that the motion to vacate can be resolved without an evidentiary hearing based on the record and governing case law.  See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

## III. DISCUSSION

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions,

---

[1]  In Alleyne, the Supreme Court held that any fact that increases the statutory mandatory minimum sentence is an element of the offense and must be submitted to a jury and found beyond a reasonable doubt.

the accused has the right to the assistance of counsel for his defense.  See U.S. CONST. amend. VI.  To show ineffective assistance of counsel, Petitioner must first establish a deficient performance by counsel and, second, that the deficient performance prejudiced him.  See Strickland v. Washington, 466 U.S. 668, 687-88 (1984).  In making this determination, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  Id. at 689; see also United States v. Luck, 611 F.3d 183, 186 (4th Cir. 2010).  Furthermore, in considering the prejudice prong of the analysis, the Court "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'"  Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)).  Under these circumstances, the petitioner "bears the burden of affirmatively proving prejudice."  Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008).  If the petitioner fails to meet this burden, a "reviewing court need not even consider the performance prong."  United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), opinion vacated on other grounds, 218 F.3d 310 (4th Cir. 2000).

A.  Petitioner's Claim of Ineffective Assistance of Trial Counsel

Petitioner first purports to identify three acts or omissions by his attorney, which he contends constitute constitutionally deficient errors.  For the following reasons, Petitioner's motion and the record conclusively establish that none of the grounds that he purports to identify in support of his ineffective assistance theory establish that his trial attorney was constitutionally deficient.

1.  Petitioner's Claim that Trial Counsel Was Ineffective Based on Counsel's Failure to Meet with Petitioner More Often and Review Discovery Material More Extensively and that Counsel Was Ineffective with Regard to Advice Related to a Plea Offer

Petitioner first asserts that if his attorney had met with him and reviewed discovery material

with him more extensively, there is a "strong possibility" that Petitioner would have "considered a plea." (Doc. No. 1 at 5). Petitioner also asserts that his attorney failed to "advise [him] to negotiate a plea with the government." (Id.). Petitioner cannot establish that the extent to which his attorney met and reviewed discovery material with him was constitutionally deficient and that counsel's errors caused Petitioner to proceed to trial instead of pleading guilty. Under the Supreme Court's decisions in Missouri v. Frye, 132 S. Ct. 1399 (2012), and Lafler v. Cooper, 132 S. Ct. 1376, 1384 (2012), to obtain post-conviction relief on a theory that his attorney's constitutional deficiencies caused him to proceed to trial instead of pleading guilty, Petitioner has the burden to prove five elements. First, Petitioner must prove that the government communicated a plea offer that either lapsed or was rejected by Petitioner. Frye, 132 S. Ct. at 1409. Second, Petitioner must "demonstrate a reasonable probability the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it." Id. The plea offer must be sufficiently definite to enable the Court to determine that the agreement ultimately would have been entered. See Merzbacher v. Shearin, 706 F.3d 356, 369-70 (4th Cir. 2013). Third, Petitioner must prove that "the performance of [his] counsel was deficient when he advised [Petitioner] to reject the plea offer on the grounds that [Petitioner] could not be convicted at trial." Lafler v. Cooper, 132 S. Ct. 1376, 1384 (2012). Fourth, Petitioner must "demonstrate a reasonable probability [he] would have accepted the earlier plea offer had [he] been afforded effective assistance of counsel." Frye, 132 S. Ct. at 1409. Finally, Petitioner must show "a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time." Id.

Here, Petitioner's allegations are wholly insufficient as a matter of law with respect to each of these elements. First, Petitioner does not even contend that the Government offered him a

plea agreement, let alone an offer sufficiently definite that this Court could determine whether it would ultimately have been entered. Accordingly, he cannot establish either the first or second elements. Nor do Petitioner's allegations establish the third element--that the performance of his attorney was constitutionally deficient. Petitioner does not purport to identify any discovery material of which he was unaware that would have affected his decision about how to plead, or what he would have learned from additional time with his attorney. Petitioner's allegations are also insufficient to establish the fourth element--a reasonable probability that he would have accepted a plea offer. Petitioner does not allege that he received a plea offer, and he further alleges only a "strong possibility" that he would have "considered a plea." Finally, Petitioner's allegations are insufficient to demonstrate a reasonable probability that the end result of the criminal process would have been more favorable. Petitioner alleges only that he would have considered a plea; he has wholly failed to establish that he would have received an offer that, in the end, would have resulted in a more favorable disposition.

2. Petitioner's Claim that Trial Counsel Was Ineffective for Failing to Object to the Admission of Petitioner's Confession to Participating in the Robbery

Second, Petitioner cannot establish that his trial counsel was deficient for failing to object to the admission of Petitioner's confession on the ground that it was introduced in violation of Miranda v. Arizona, 384 U.S. 436 (1966). When a defendant is in custody or otherwise deprived of his freedom, Miranda requires law enforcement, before initiating questioning, to warn the accused "that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." Miranda, 384 U.S. at 444. The law enforcement officer who testified at trial about Petitioner's confession testified that Petitioner was advised of his Miranda rights, including the

right to remain silent, indicated that he understood those rights, and agreed to talk to the officer. (Criminal Case No. 3:10-cr-208-RJC-DSC, Doc. No. 168 at 68). Accordingly, Petitioner's statement was admissible under Miranda.[2] See Berghuis v. Thompkins, 560 U.S. 370, 384 (2010) (holding that Miranda does not require the exclusion of statements given by a defendant after he receives warnings that he understands). Any decision by counsel not to object was reasonable, and Petitioner cannot establish prejudice because there was no reasonable probability that the objection would have been sustained. See id.

3. Petitioner's Claim that Trial Counsel Was Ineffective for Failing to Raise Issues at Trial

Third, Petitioner's general allegations that his attorney "failed to raise issues during trial" and conducted a "lethargic, lackadaisical, apathetic, and ineffectual direct, cross, [and] redirect" are insufficient to support a claim of ineffective assistance of counsel. These allegations are conclusory and fail to identify any specific conduct by counsel that was objectively unreasonable. United States v. Roane, 378 F.3d 382, 401 (4th Cir. 2004) ("'Airy generalities, conclusory assertions and hearsay statements [do] not suffice' to stave off summary judgment or entitle a habeas petitioner to an evidentiary hearing.") (quoting United States v. Aiello, 814 F.2d 109, 113 (2d Cir. 1987)). Furthermore, Petitioner has not identified anything in the record or elsewhere demonstrating a reasonable probability that more objections or a different approach to witness examinations would have changed the outcome of the trial.

---

[2] Petitioner appears to contend in his motion to vacate and in his Reply that his Miranda rights were violated because there was no written waiver of his Miranda rights. (Doc. No. 1 at 8 ("I failed to sign my name on the Miranda waiver of rights."); Doc. No. 15 at 5 (stating that Petitioner "never endorsed the Adult Waiver of Rights form with his signature"). However, "a written waiver is not required under Miranda." United States v. Montieth, 662 F.3d 660, 669 (4th Cir. 2011) (citing North Carolina v. Butler, 441 U.S. 369, 373 (1979)). Rather, "[t]he lack of a written waiver goes to the weight of the officers' testimony." Montieth, 662 F.3d at 669.

In sum, Petitioner's claims of ineffective assistance of trial counsel are without merit.

B.  Petitioner's Claim of Ineffective Assistance of Appellate Counsel

In his next claim, Petitioner contends, in conclusory fashion, that his "appellate counsel . . . failed to raise issues during . . . direct appeal." (Doc. No. 1 at 5).  This contention is insufficient to state a claim of ineffective assistance of appellate counsel, as Petitioner has not identified any specific issues that his appellate counsel failed to raise; thus, he has failed to identify issues that are "clearly stronger than those presented."  United States v. Mason, 774 F.3d 824, 829 (4th Cir. 2014) (quoting Smith v. Robbins, 528 U.S. 259 (2000)).  Moreover, Petitioner has not identified any issues creating a reasonable probability of a different outcome.  Accordingly, Petitioner cannot establish deficient performance or prejudice.

In sum, Petitioner's claims of ineffective assistance of appellate counsel are without merit.

C.  Petitioner's Claims of Prosecutorial Misconduct, Insufficiency of the Evidence, and
     Wrongful Imposition of a Mandatory Minimum Sentence

In his remaining claims, Petitioner attempts to raise three issues that are all subject to a procedural bar.  First, he argues that the introduction of his confession at trial constitutes prosecutorial misconduct.  (Doc. No. 1 at 8).  Second, he argues that insufficient evidence exists to support the firearm charge of which he was convicted.  (Id. at 9).  Finally, he reasserts an argument that the Court of Appeals for the Fourth Circuit rejected on Petitioner's direct appeal— that he was erroneously subject to a mandatory minimum sentence based on facts not charged in the indictment, in violation of Alleyne v. United States, 133 S. Ct. 2151 (2013).  (Id. at 6).

Because Petitioner did not raise any of these arguments before this Court during his criminal case, each of these arguments is subject to dismissal unless Petitioner can show either cause and prejudice or actual innocence.  See United States v. Frady, 456 U.S. 152, 170 (1982); Jackson v.

United States, 638 F. Supp. 2d 514, 601 (W.D.N.C. 2009).  To establish "cause," Petitioner must show that "some objective factor external to the defense" impeded his efforts to raise the issue earlier.  Coleman v. Thompson, 501 U.S. 722, 753 (1991).  To establish prejudice, Petitioner must demonstrate that the error he alleges "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."  Frady, 456 U.S. at 170.  "'[A]ctual innocence' means factual innocence, not mere legal insufficiency."  Bousley v. United States, 523 U.S. 614, 623 (1998).  Petitioner cannot establish actual innocence unless he can show that "it is more likely than not that no reasonable juror would have convicted him in the light of . . . new evidence."  United States v. Jones, 758 F.3d 579, 583 (4th Cir. 2014) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)).

Petitioner cannot overcome the procedural bar to his argument that the introduction of his confession constitutes prosecutorial misconduct.  (Doc. No. 1 at 8).  Although ineffective assistance of counsel could establish the cause necessary to excuse a procedural default, see Murray v. Carrier, 477 U.S. 478, 489 (1986), Petitioner's allegations do not establish ineffective assistance of counsel.  As explained previously, Petitioner's attorney was not constitutionally deficient for failing to object to Petitioner's confession.  Nor can Petitioner establish prejudice because his confession was admissible.  The Government, therefore, did not engage in prosecutorial misconduct, which requires "improper" conduct that prejudiced "his substantial rights so as to deprive him of a fair trial."  United States v. Scheetz, 293 F.3d 175, 185 (4th Cir. 2002).  Accordingly, Petitioner cannot establish that any failure by counsel to raise a prosecutorial misconduct argument worked to Petitioner's actual and substantial disadvantage.[3]

---

[3]  For the same reason—that Petitioner simply fails to show that the Government engaged in any prosecutorial misconduct—Petitioner's prosecutorial misconduct argument fails on the merits.

Petitioner does not purport to allege the kind of actual innocence required to overcome a procedural default. Although Petitioner alleges that the evidence was insufficient to hold him responsible for the firearm possession of his co-conspirator, that allegation is one of "mere legal insufficiency," inadequate to establish actual innocence. Bousley, 523 U.S. at 623. Nor does Petitioner identify any "new evidence" establishing his innocence. Jones, 758 F.3d at 583.

Petitioner furthermore cannot overcome the procedural bar to his claim that the evidence was insufficient to establish that he used, carried, or possessed a firearm. (Doc. No. 1 at 9). The only cause that Petitioner purports to allege is "lack of communication between counsel and client," but this allegation does not include either an attorney error amounting to objectively unreasonable conduct or prejudice as required to establish ineffective assistance of counsel. Murray v. Carrier, 477 U.S. at 492 ("Attorney error short of ineffective assistance of counsel does not constitute cause for a procedural default . . . ."). Nor has Petitioner identified any actual and substantial disadvantage that infected his entire trial with error. The evidence at trial, which included Petitioner's confession and the testimony of two of his coconspirators, amply established that he knowingly associated with a criminal and participated in an unlawful undertaking, and "that it was reasonably foreseeable that [Petitioner]'s codefendant would use the gun." United States v. Sanders, No. 96-4972, 1997 WL 585742, at *1 (4th Cir. Sept. 23, 1997). Accordingly, Petitioner cannot establish prejudice from his failure to raise this argument before this Court or on direct appeal.[4] See id.

Petitioner's final claim that he was erroneously subject to a mandatory minimum sentence based on facts not charged in the indictment, in violation of Alleyne, is foreclosed by the Fourth

---

[4] For the same reason, Petitioner's argument that the evidence is insufficient to hold him responsible for the firearm is meritless.

Circuit's rejection of this claim on Petitioner's direct appeal. An issue previously decided on direct appeal may not be raised on collateral review. See Boeckenhaupt v. United States, 547 F.2d 1182, 1183 (4th Cir. 1976); United States v. Bell, 5 F.3d 64, 66 (4th Cir. 1993) (The law of the case doctrine "forecloses relitigation of issues expressly or impliedly decided by the appellate court."). Furthermore, Petitioner cannot overcome the procedural bar imposed by his failure to raise this issue at trial. Although Alleyne was decided after Petitioner was sentenced, Petitioner does not allege that his attorney was constitutionally deficient for failing to anticipate the decision, nor could he successfully do so. See United States v. Dyess, 730 F.3d 354, 363 (4th Cir. 2013). Petitioner could not establish prejudice in any event. As the Fourth Circuit found, "the overwhelming evidence revealed that the weapon was . . . discharged at police officers as the co-conspirators fled. Thus, we have no difficulty finding the error in instructing the jury harmless because it is clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error." Clinton, 547 F. App'x at 263. Accordingly, Petitioner cannot establish that a jury would not have found that the firearm was discharged if that fact had been included in the indictment and submitted to the jury. See id.

Finally, the Court notes that, in his Reply to the Government's brief in response to the motion to vacate, Petitioner merely restates many of the same arguments made in his original motion to vacate. As the Court has discussed, Petitioner's claims are either without merit and/or procedurally barred, and Petitioner's Reply adds nothing to alter this Court's conclusions. Petitioner also appears to raise new claims that were not made in the original motion to vacate. For instance, he contends that his trial counsel was ineffective for failing to move to dismiss the indictment as fatally defective, and that trial counsel was ineffective for failing to raise an argument that the imposition of a mandatory minimum sentence constituted cruel and unusual

punishment in violation of Petitioner's Eighth Amendment rights. (Doc. No. 15 at 3-4). To the extent that Petitioner seeks, at this late hour, to amend the motion to vacate to add new claims, those claims do not relate back to the original motion to vacate and are therefore time-barred. See Mayle v. Felix, 545 U.S. 644, 662-64 (2005).

## IV.    CONCLUSION

For the reasons stated herein, Petitioner's § 2255 petition is denied and dismissed.

**IT IS THEREFORE ORDERED THAT**:

1.    Petitioner's § 2255 motion, (Doc. No. 1), is denied and dismissed with prejudice.

2.    **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

Robert J. Conrad, Jr.
United States District Judge